**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ANTHONY WAYNE BURDETT, JR.** | § | |
| | § | |
| **V.** | § | **A-10-CA-624-LY** |
| | § | **(A-09-CR-129-LY)** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Anthony Wayne Burdett, Jr's § 2255 Motion to Vacate, Set Aside or

Correct Sentence (Clerk's Doc. No. 37); Movant's Memorandum in Support (Clerks's Doc. No. 38);

the Government's Response (Clerk's Doc. No. 47); and Movant's Reply (Clerk's Doc. No. 50). The

undersigned submits this Report and Recommendation to the United States District Court pursuant

to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States

District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United

States Magistrate Judges, as amended.

**I.    Procedural Background**

On March 17, 2009, Movant Anthony Wayne Burdett, Jr. was charged with bank robbery,

in violation of 18 U.S.C. § 2113 (count one), accessory after the fact, in violation of 18 U.S.C. § 3

(count two), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (count three).

Burdett pled guilty to counts one and three of the indictment without a plea agreement. On August

7, 2009, the Court sentenced Burdett to a 175-month term in prison for count one and a concurrent

120-month term in prison for count three, followed by four years of supervised release, and a $200

fine. After sentencing, the Government moved to dismiss count two of the indictment and the Court granted the Government's motion. Burdett did not file a direct appeal.[1]

Burdett now brings the instant habeas petition under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Burdett claims four points of error in his § 2255 motion: (1) his attorney failed to effect an appeal, despite Burdett ordering him to do so; (2) his attorney failed to negotiate a plea agreement; (3) his attorney failed to challenge a five-level enhancement for possession of a firearm, even though the gun was not used during the bank robbery and Burdett had no knowledge that the gun was even in the vehicle; and (4) his attorney failed to file a motion to suppress statements made to law enforcement because he made those statements under duress and law enforcement did not advise him of his *Miranda* rights. The Court held an evidentiary hearing on August 16, 2011, on the issue of whether Burdett directed his attorney to file an appeal and whether Burdett's counsel ignored that directive.

## II.     Factual Background

In January of 2009, Burdett and his minor son, Ahmad Burdett, robbed Austin Telco Federal Credit Union. Rearraignment at 13–17. Burdett drove Ahmad to the Federal Credit Union and dropped him off to commit the bank robbery. *Id.* Ahmad entered the bank and gave a note to the teller stating: "This is a robbery, no bullshit, I want all 20, 50, 100 bills, no dye pack or bate notes. I am armed so follow all instructions and no one gets hurt." *Id.* The teller put the money Ahmad demanded, including a tracker and some bait notes, in the bank bag Ahmad provided. *Id.* The teller

---

[1]Burdett objected to the original attorney appointed by the Court, contending that he was unable to communicate effectively with him. Thus, a motion to withdraw was filed on May 18, 2009. While the Court granted the motion after a hearing, it assigned the case to a different Assistant Federal Public Defender.

then activated a silent alarm and another teller called 911to report the robbery.  *Id.*  Police reports confirm that Burdett drove himself and Ahmad away from the scene.  *Id.*  After a high speed chase ending in a collision with another vehicle, police arrested Burdett and his son.  *Id.*  From the vehicle Burdett was driving, the police recovered a briefcase containing the money bag Ahmad had given to the teller, the bank's money, the bait notes, the tracker, and Burdett's revolver, a Ruger .357.  On January 9, 2009, police interviewed Burdett about the bank robbery.  *Id.*  Police informed Burdett of his Miranda rights and he waived them.  Burdett admitted that he possessed a .357 Ruger and that he picked up Ahmad after the robbery.  *Id.*

## III.   Standard of Review

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If the error is not of constitutional or jurisdictional magnitude, then the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice."  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).  However,  a defendant's claim

of ineffective assistance of counsel does give rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312–313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)). This same two-part standard applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Therefore, the movant has the burden of proof and of persuasion to establish that a reasonable probability exists that but for his counsel's ineffectiveness,

he "would not have pleaded guilty and would have insisted on going to trial." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987).

## IV.    DISCUSSION

### A.    Failure to File an Appeal

Burdett argues that his attorney, Jose Gonzalez-Falla, provided ineffective assistance of counsel when he failed to follow Burdett's instruction to appeal his sentence. The Court—faced with competing affidavits and versions of whether Burdett requested an appeal—held an evidentiary hearing on August 16, 2011, as required by Fifth Circuit precedent. *E.g.*, *United States v. Heckler*, 165 F. App'x 360 (5th Cir. 2006); *see also United States v. McMillen*, 96 F. App'x 219, 221 (5th Cir. 2004) (holding that the petitioner, who had alleged that his counsel ignored his request to file a notice of appeal, was entitled to evidentiary hearing on the issue). The Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).[2] "[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Peguero v. United States*, 526 U.S. 23, 28 (1999).

In this case, the Court finds Burdett and his wife not credible and finds Gonzalez-Falla credible. Based on the evidence presented at the hearing, coupled with the parties' submissions, the Court makes the following factual findings:

_____

[2]Contrary to the Government's position, *Roe* did *not* adopt the Ninth and First Circuits' *per se* rule that an attorney has an obligation to (1) "file a notice of appeal, or (2) . . . discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly." Rather, the Court "reject[ed] this *per se* rule as inconsistent with *Strickland*'s holding."

1.      Burdett knowingly and voluntarily pled guilty and Judge Yeakel sentenced him to 175 months.

2.      After sentencing, Burdett met with Gonzalez-Falla, who explained to him that he did not see any valid grounds for appealing his sentence; however, he would file a notice of appeal if Burdett requested one.

3.      Although Burdett asked about an appeal, he did not instruct Gonzalez-Falla to file one. After Burdett refrained from filing an appeal, Gonzalez-Falla sent him a letter the next business day explaining to Burdett that his representation had terminated.

4.      Although Lisa Burdett, Anthony's wife, may have contacted Gonzalez-Falla after the sentencing hearing, she never instructed him to file an appeal on Burdett's behalf.

To elaborate, Gonzalez-Falla testified that he explained the appellate process to Burdett. He told Burdett that he had to appeal within ten days, and despite Gonzalez-Falla's belief that he did not have any meritorious arguments, Gonzalez-Falla told Burdett that he would file notice of an appeal if requested. According to Gonzalez-Falla, Burdett understood that any appeal would be frivolous and decided against filing one. Gonzalez-Falla further explained that he advised Burdett not to execute a plea agreement because there was not an offer available that reduced the charges, the Government was willing to accept a plea to two of the counts, and signing a plea agreement would require waiving the right to appeal. Gonzalez-Falla stated that he advised Burdett to retain the right to appeal so that he could appeal his sentence in the event that Judge Yeakel sentenced Burdett above the guideline range.

At the hearing, Burdett and his wife contradicted Gonzalez-Falla's version. However, it took lengthy prodding by Burdett's attorney for either Burdett or his wife to state unequivocally, "I ordered Gonzalez-Falla to file an appeal." Instead, Burdett first stated that "So like I said, I asked him, Okay. 'Well, will you file an appeal on my behalf?' And he kind of shook his head disgusted and said, 'Well, you know, I'll see what I can do.'" Transcript of Hearing at 7. Burdett equivocated

6

during his testimony and qualified his exchange with Gonzalez-Falla. *E.g. id.* at 12 ("Basically just asked him for—basically for an appeal. 'What merits do I have on an appeal?' He told me there were no merits. Well, basically asked him again, 'Do I have an appeal? Will you file one?' His only answer was, 'I don't see any merits that you have for an appeal.'").

Burdett's wife Lisa also equivocated on whether she told Gonzalez-Falla to file an appeal on Burdett's behalf. First, she did not explicitly state that Burdett told her to direct Gonzalez-Falla to appeal; rather, she said he requested that she check into the "appeal process." *See id.* at 34 ("So, I mean, we [Lisa and Anthony] talked about an appeal. He wanted me to contact him [Gonzalez-Falla] to get an appeal, to find out about his appeal, because he wouldn't give him one. . . . He did tell me to contact him to try to find out about the appeal process. To find out about the appeal."). She also testified that Burdett said "[t]hat he wouldn't—that basically he wouldn't give him an answer of yes or no, if he was going to appeal." *Id.* at 40. Mrs. Burdett did not unequivocally state that she ordered Gonzalez-Falla to file an appeal. *See id.* at 43 (Sharon Pierce: "So having heard that from his attorney, did you say, 'I understand all of that, but I want you to file an appeal on behalf of Mr. Burdett?'" Lisa Burdett: "No. I don't recall that.").

The Burdetts' actions, in addition to their testimony, also fail to support their story. Neither Lisa nor Anthony performed any action beyond their brief conversations with Gonzalez-Falla. They did not contact anyone in the Clerk's Office or the U.S. Attorney's Office. As Mrs. Burdett said, "I guess I just didn't follow up on that. I didn't find out if [Gonzalez Falla filed an appeal] because I thought he would contact Anthony and let him know." *Id.* at 47. Mr. Burdett likewise failed to follow up with Gonzalez-Fall or contact anyone related to the Court. *Id.* at 26–27 (Pierce: "Now, between August the 7th of 2009 when you were talking in person to Mr. Gonzalez-Falla and June

of 2010 . . . did you have any communications with Mr. Gonzalez-Falla about your appeal . . . ?

Burdett: "No."); *see also id.* at 27 (acknowledging that Burdett failed to contact any other court

personnel or the U.S. Attorney's office to complain that his lawyer failed to file an appeal). Finally,

Burdett's inaction after receiving Gonzalez-Falla's termination letter is inconsistent with Burdett's

claim that he directed an appeal be filed. *See id.* at 57.

For all of these reasons, the Court does not find the Burdetts' testimony credible, and instead

credits the testimony of Mr. Gonzalez-Falla. Because the Court concludes that Burdett did not ever

instruct his attorney to file a notice of appeal, there was no ineffective assistance of counsel as a

result of the lack of an appeal being filed.

**B.      Failure to Negotiate a plea bargain**

Burdett further argues that he was not provided effective assistance of counsel when

Gonzalez-Falla failed to negotiate a plea agreement with the Government. An attorney exercising

his professional judgment on whether negotiating a plea bargain would be favorable to a defendant

is generally immune from challenge. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (articulating

that "strategic choices made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable.").

According to Burdett, he did not receive any kind of benefit for pleading guilty to counts one

and three of the indictment. Gonzalez-Falla states in his affidavit that the Government offered

Burdett a plea agreement which would require him to plead guilty to counts one and three, waive his

rights to appeal his sentence, and waive his right to collaterally attack his conviction on any ground.

In return, the Government would move to dismiss count two of the indictment. Gonzalez-Falla

presented this agreement to Burdett and advised him to reject the agreement because of the broad

appellate waiver provisions and his belief that the Government would dismiss count two anyway if Burdett pled guilty to counts one and three.

At the hearing, Gonzalez-Falla elaborated on this, and offered two separate justifications for pleading guilty without a plea agreement. First, by not entering a plea agreement, Burdett retained the right to appeal. Gonzalez-Falla stated that this was particularly important in Burdett's case because Burdett's criminal history and use of his son could have prompted Judge Yeakel to upwardly depart from the Guidelines and sentence Burdett to a longer prison term. By preserving the right to appeal, Burdett would at least have an opportunity to have such a sentence reviewed by the Court of Appeals. Second, Gonzalez-Falla believed that it was possible that the Government would file additional charges against Burdett if he did not plead guilty. Assistant U.S. Attorney Pierce confirmed this at the hearing, stating that the Government considered seeking a superseding indictment but chose not to after Burdett pled guilty.

In short, Gonzalez-Falla believed that Burdett could get all of the benefits of a plea agreement—the dismissal of count two and the avoidance of new charges—without any of the burdens—the waiver of appeal. And it turns out that Gonzalez-Falla was correct, given that Burdett pled guilty to counts one and three of the indictment without a plea agreement, and the Government in fact moved to dismiss count two after sentencing, and did not seek additional charges.

Corroborating all of this is the fact that Burdett appeared before a magistrate judge and entered a plea of guilty to counts one and three of the indictment. During the rearraignment, Gonzalez-Falla informed the Court—while in Burdett's presence—that there was no plea agreement in the case. Burdett failed to comment on, object to, or otherwise mention that he wanted to enter a plea agreement in the case:

> THE COURT: Okay. There was a draft of a plea agreement submitted. What is the intention of the parties with regard to a plea agreement?
>
> MR. GONZALEZ-FALLA: There's no plea agreement, your Honor.
>
> THE COURT: There is no plea agreement.
>
> MS. PIERCE: We're not going to enter into a plea agreement.
>
> THE COURT: Okay. Has there been any discussion that we need to put on the record as to Count 2 of the indictment?
>
> MS. PIERCE: Once Mr. Burdett enters his plea of guilty, Counts No. 1 and 3, the government's going to move to dismiss Count No. 2.
>
> THE COURT: Okay. Mr. Burdett, although there's no written plea agreement in this case, the government has agreed in open court to dismiss Count No. 2 once the -- once you've been sentenced on the other two counts. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: But there's no other agreement that you have with the government. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Transcript of Rearraignment at 9–10. Burdett further represented to the Court that he was making his plea of guilty freely and voluntarily, and no one had threatened or forced him in any way to plead guilty. Transcript of Rearraignment at 12.

Gonzalez-Falla exercised his professional judgment that Burdett would receive a better bargain if he did not enter a plea agreement. A plea agreement would have forced Burdett to give up his right to appeal, which is disproportionate to the benefit conferred in the agreement. Gonzalez-Falla's professional judgment weighing the costs and benefits of negotiating and entering a plea agreement is a "strategic choice" that is "virtually unchallengeable." *Wiggins*, 539 U.S. at 521; *see also United States v. Arroyo-Arias*, No. C-10-229, at *3 (S.D. Tex. Aug. 9, 2011) (holding that a

lawyer's failure to negotiate a plea agreement—when in his professional judgment plea agreements in the division are not favorable—is generally immune from challenge).

### C. Failure to Object to the Firearm Enhancement

Burdett also contends in his motion that his counsel was ineffective when he failed to object to the Presentence Investigation Report (PSR)'s recommendation of a five level upward adjustment for possession of a firearm. According to Burdett, the firearm was not used or possessed during the bank robbery, and he had no knowledge the gun was in the car. The record flatly contradicts this claim. Burdett has not shown "a reasonable probability that the result of the proceedings would have been different but for counsel's [alleged] unprofessional errors." *Crane*, 178 F.3d at 312. It is likely that if counsel had made the objection, the Court would have rejected the argument because (1) the record shows that Burdett had constructive possession of the gun, and (2) Count 3 of the indictment—to which Burdett pled guilty—charged Burdett with being felon in possession of a firearm.

First, Burdett had constructive possession of the gun. "Constructive possession is the knowing exercise of, or the power or right to exercise dominion or control over the item at issue, and may be shown by dominion over the vehicle in which the item is located." *United States v. Perez*, 897 F.2d 751, 754 (5th Cir. 1990). In *Perez*, authorities found a sawed-off shotgun in defendant's vehicle after reports that shots had been fired from the defendant's vehicle. *Id.* at 752. The court held that the defendant had actual or constructive possession of the gun because the gun was found in the defendant's car. *Id.* at 754. It was irrelevant whether the gun had been put in the defendant's car by another person or "abandoned" in his car by other defendants. *Id.* In this case, the firearm was found in the getaway car which Burdett was driving. Burdett admitted during an interview with

police that he possessed a Ruger revolver and that he picked up Ahmad Burdett after the robbery.

Both Burdett and his son were apprehended after the robbery. Given Burdett's constructive

possession of the gun, there was no basis for counsel to challenge the five level upward adjustment.

Second, Burdett pled guilty to count three of the indictment related to Burdett's possession

of the firearm. According to the Court:

> THE COURT: Count 3 alleges that in January of 2009, in the Western District of
> Texas, that you, having been convicted of a crime punishable by imprisonment for
> a term exceeding one year, knowingly possessed in or affecting commerce a firearm,
> that is a Ruger, .357 revolver, serial number given in the indictment, and that
> revolver had been shipped or transported in interstate or foreign commerce. Do you
> understand what Count 3 is saying that you did?
>
> THE DEFENDANT: Yes, sir.

Transcript of Rearraignment at 5. When asked what his plea to this charge was, Burdett answered

"Guilty." *Id.* at 12. Further, Burdett admitted that the Government's factual basis for the plea was

correct, and that basis included the following:

> The police recovered from a briefcase in the back—recovered a briefcase in the
> backseat. Found inside the briefcase was the old-style blue bank money bag which
> contained Austin Telco Credit Union's money, including bate (sic) money and the
> tracker. Also inside the briefcase was the defendant's revolver, a Ruger, .357
> revolver, Serial No. 17456149, loaded with ammunition. Additionally, binoculars,
> a ski mask, and a walkie-talkie were found inside the briefcase.

*Id.* at 16, 18. Furthermore, at sentencing, Burdett stated to the Court that he had sufficient time to

review the PSR that was prepared by the probation department and had understood the implications

of the PSR findings under the sentencing guidelines. Transcript of Sentencing at 3–4. Finally, at

the hearing, Gonzalez-Falla testified that Burdett never asked him to challenge the enhancement.

Given that he had pled guilty to count 3 and raised no objections to the PSR, the Court would plainly

have rejected an argument that the firearm enhancement was inapplicable. Because counsel cannot

be ineffective for failing to raise a frivolous or groundless argument, *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997), this claim has no merit.

**D.      Failure to Suppress Evidence**

Burdett also argues that he was not provided effective assistance of counsel when Gonzalez-Falla failed to suppress evidence of statements he made to law enforcement on January 9, 2009. Burdett states that the police never advised him of his *Miranda* rights and he made his statements under duress.

This argument is meritless. A defendant waives all non-jurisdictional defects in the proceedings leading to his conviction by entering a plea of guilty. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). In this case, there was no trial. By entering a plea of guilty, Burdett waived all non-jurisdictional defects leading to his conviction and sentence.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court concludes that Gonzalez-Falla's performance was not deficient, and he provided effective assistance to Burdett in this case. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that Movant Anthony Wayne Burdett, Jr.s Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 be **DENIED**.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability should not be issued.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 11th day of October, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE